This matter went up to the Board of Immigration Appeals, Political Asylum case in Afghanistan. It's a political asylum case coming from Afghanistan. The aggravement of the Board's decision was that country conditions had changed by the time my client's case was heard. The Taliban was out of power and country conditions had changed to an extent that he would no longer have any fear of the Taliban. The Board did not address the other issue that was presented by Mr. Asmat, which was fear of future persecution in the hands of the Northern Alliance as well as the Taliban. With regard to the issue of country conditions, there was quite a large amount of material that was submitted by both sides on that issue. And both groups actually presented a number of articles which actually sustained Mr. Asmat's point. In Exhibit 4, which was presented by the government, was a series of articles. And in those articles, they discussed the current conditions in Afghanistan at the time of the hearing. On page 215 to 218 ---- Kagan. Can I ask you a question about exhaustion? At the time, obviously, his articulated fear was of the Taliban. He articulated both. Well, he mentioned the Northern Alliance. Yes, he submitted a declaration with regard to the conscription by the Taliban and the future fear of the Northern Alliance. He makes no developed argument to the BIA with respect to fear of future persecution by the Northern Alliance. So why is ---- why was there enough of a clue to the BIA that he actually had a fear of future persecution? Well, in the brief, we discussed the actual fear of future persecution. We brought in the elements that the Pashtuns, who are primarily the Taliban, who are primary Pashtuns, were out of power, that the Northern Alliance is primarily made up of the other ethnic groups that are in Afghanistan. And he presented his fear that they would go after him as just for merely being Pashtun at that time. And that was developed in the testimony, and it was developed in the brief. Well, there's one sentence that mentions it. Is that enough to put the BIA on notice that they've got to paw around in the record and find whether there is support for that position? Are you referring to the board brief or the ---- Yes. Okay. Well, the board brief was ---- didn't develop the issue perhaps as best as it could be. But we did discuss that, and we did put the emphasis on the current conditions that we had submitted. We had submitted many conditions showing that, in fact, the Northern Alliance was committing atrocities against the Pashtuns merely based on their ethnicity. And we did develop that at the trial level. Well, what evidence is there in the record to show that the Northern Alliance even knows that Asmat exists? Well, the background ---- we don't have anything per se on Mr. Asmat. This is background materials. However, we presented extensive material showing how the Northern Alliance and its various fractions, in fact, did go after the Pashtuns whenever they came into their custody. And as we ---- But there's no particularized showing as to him. No. There's no particularized showing in those documents. However, the procedure when we deport somebody is well known. They're deported to the government agency, and the government agency is being made fully aware of the fact that they're being deported and why. And then they're normally taken into the custody of that particular government. So at that time, there would be a particularized notice. I have trouble understanding how you can give us a compelling, that is to say, enough to overcome what the I.J. decided case, that he has a reasonable fear of persecution by the Northern Alliance. What he did in Afghanistan was refuse to fight for the Taliban. That is correct. And I thought that, in fact, the primary thrust of your argument here was that if he goes back, it's the remnants of the Taliban who still have some ---- I won't ---- maybe authority is too strong, but they still have some ability to get him, might get him in response for retaliation for his having refused to fight. Yes. That is, in fact, one of our positions. And ---- Now, why ---- even if that's true, that is to say, even if it's true that there's some risk that remnants of the Taliban now back in the general population, as he described, having shaved off their beards but they're still there, might injure him or kill him, why is that on account of a protected ground? That is to say, what he did was he refused to join the military as the Taliban then had it. Correct. And generally, one can say that conscription by a military or refusal to be conscripted is not a ground for political asylum. That's the point of my question. Right. But this Court and other courts have decided that that doesn't mean in every case an avoidance of conscription would not meet one of the protected grounds. In fact, in a couple cases, Ramos-Vazquez and Bizarra-Rivera, this Court found that if a person is refusing conscription into an army that is committing inhuman acts or violating human rights of others, that that, in fact, is political speech and that is a protected ground. And that was exactly why he didn't want to go into the Taliban army. Well, he didn't say that. He did on several occasions, actually, in both on direct and under cross. He made no mention of atrocities. I just read the transcript. Well, he may not have said the word atrocity, but what he did say was that he didn't want to go and kill other Pashtuns or kill other people or cause the harm to support the Taliban army. And he did repeat that he did. That is what he said, of course, but that's what an army does. Yes. But we know that this particular army, and it's supported by the background provided by both sides, did, in fact, go out of its way to commit many atrocities. And that was what he was trying to avoid when he said he didn't want to be involved with harming other Pashtuns and other ethnic groups. Okay. And so given the background materials that were put in, they do, in fact, support what Mr. Asmat was saying. The DOS or, I'm sorry, Department of State report on country conditions actually said that the Taliban was committing numerous human rights violations and making people And, in fact, at page 292 of the AR, they actually said that the Taliban was, at that time, forcibly conscripting people. So he had every reason to believe that when he returned to Afghanistan, if he was forced to do so, that he would, in fact, face conscription by the Taliban or perhaps some sort of other punishment for being a traitor. It's also documented in the background materials that the Taliban had a habit of sending people that they were not happy with to the front lines, hopefully to allow them to be eliminated. I have two minutes left, so I'd like to reserve the balance. Certainly. Mr. Miller? Thank you, Your Honor. May it please the Court, Eric Miller from the Department of Justice on behalf of Respondent Attorney General Gonzalez. The decision of the Board of Immigration Appeals denying relief to Petitioner in this case is supported by two independent findings, each of which is supported by substantial evidence, and either one of which, standing alone, is sufficient to support the Board's result. And those findings are, first, that Petitioner did not show that he had been substantially in Afghanistan since the time that he left. With respect to the past persecution by the Taliban, the only claim that he made of anything that had happened to him was that the Taliban had attempted to conscript him and that they had arrested his father for resisting his conscription. But as the Supreme Court has explained in Elias Sicarius, conscription or punishment for resistance to conscription is not subject to persecution on account of one of the protected grounds in the statute. Does it make a difference that, at least according to his testimony, that the threatened proscription into the military was in violation of the Taliban's own law? That is to say, he says, and we're supposed to regard his testimony as credible, that his brother was already serving, and then under Afghan law, it was illegal to take more than one son. Does that make a difference? No. I mean, the fact that the conscription may violate the law of a foreign country does not establish that it's on account of one of the protected grounds in the statute. And he's made no allegation that the reason they sought to conscript him, even if that was in violation of the law, was because of any political opinion that he had or his ethnicity or any other ground in the statute. And with respect to changed conditions, although it is true that, you know, Petitioner has presented a lot of evidence that Taliban remnants are still active in Afghanistan, but that doesn't show that the Taliban are still in a position to be conscripting people. And certainly, the Board's contrary finding is important. Well, he's not arguing he's going to be conscripted. He's arguing that they're going to retaliate against him. That's – I mean, to the extent that that is his argument, again, he hasn't shown that any such retaliation would be anything other than simply a response to his refusal to be conscripted, rather than on one of the protected grounds in the statute. Well, would that doctrine still apply if the Taliban is no longer in power and they're coming after him for serving or for refusing previously to serve or coming after him now to try to serve in what amounts to a rebel army? Yes, it would. I mean, a conscription, whether into a government army or a rebel army, is not persecution on account of a protected ground. And indeed, Elias Sicarius involved a guerrilla movement that was seeking to conscript people. So even if there were a showing that there was likely to be some sort of retaliation for the conscription, which we wouldn't concede that he's made enough of a showing on that, but even if he had, that wouldn't establish that it was on account of one of the statutory grounds. With respect to his claim of persecution by the Northern Alliance, this claim, although he did mention the Northern Alliance in his brief to the Board of Immigration Appeals, it was not argued in such a way as to preserve the claim there. And that's evidenced by the fact that although the Board spoke generally about Petitioner not having shown a likelihood of future persecution, the only specific comments that it made were about the Taliban, because that's really all that the Board was on notice of that he was presenting to them. But even if the claim were preserved, it wouldn't be sufficient for a number of reasons, one of which is that the only claims that he's made about what the Northern Alliance has done are very vague. They refer to the 1990s when there was a civil war going on, and he hasn't shown that the actions of the Northern Alliance some years ago in the context of an ongoing civil war are attributable to the present government, which although it includes some people who were in the Northern Alliance, also includes people of other factions and other ethnicities, and is not engaged in a civil war, at least not one with ongoing large-scale combat operations of the kind that were The specific fear that he's worried about with respect to the Northern Alliance is that they're persecuting Pashtuns, but he says on page 105 of his testimony that Kandahar, the region of Afghanistan that he lived in, is still controlled by the Pashtuns, which suggests that it's a safe area of the country to which he could protect. There's been a motion on behalf of Mr. Asmat that we take judicial notice of certain The proper course for a Petitioner who has new evidence that he wants to present is to file a motion with the BIA to reopen his case and present it to them, and if the Board were to refuse the motion to reopen, then he could get judicial review, and this Court would be able to determine whether the Board abused its discretion. Would the motion to reopen now be timely? Yes, it would. Although there are, in general, time limits on motions to reopen, HCFR Section 1003.2 creates an exception to time limits for an asylum claimant who is presenting evidence of change in the circumstances in his country, so he would be able to present that now, and indeed, as the Court explained in Fisher, for example, he's required to present it to the Board before he can go to this Court. And I would add that even if the Court were to consider those documents, although they do show that some Taliban remnants are still active, they do not show that the Board's decision to the contrary was not supported by substantial evidence. Has there been a motion to reopen filed in this case? Not the record does not reflect one, and I'm not aware of one, Your Honor. If there are no further questions, we ask that the petition be denied. Thank you. Thank you, Mr. Miller. Ms. Dixon. With respect to the notice, the judicial notice we've asked for our articles, those were put in for the purpose of presenting the actual country conditions in this case. Well, yes, but this Court isn't a fact finder in the first instance, so isn't the newly discovered or newly adduced evidence? Well, we felt that given the gravamen of this particular case, that we needed to present the conditions as they existed at the time. The Board referred to the ---- But hasn't the Supreme Court in Ventura made it abundantly clear, even if it weren't before, that we can't, in the first instance, make a decision about changed country conditions? Well, that may be true, but the Board has already ruled on the country conditions, and this is just a ---- You just got through telling me a minute ago that it hasn't. Well, the Board ---- It didn't rule on the Northern Alliance issue, which is what ---- Well, that's correct. It didn't rule on that issue, but it did rule on the issue of the Taliban saying that the conditions had changed to such an extent that he no longer would fear anything from the Taliban. Well, to the extent that you're trying to argue the conditions have continued to change so that they've shaved off their beards, but they're still there and powerful, you're really trying to say that there's ---- And it's true, Afghanistan has changed continuously. But to the extent that you're trying to argue things have changed since then, isn't that something that needs to be taken to the Board first? Well, we felt that it would be helpful for this Court to have the conditions as they currently are in front of it when it was making its decision, rather than go back to the Board and have yet another delay of maybe a year or two while the Board decides whether it's going to grant the motion to reopen. Gee, delay is just in your favor. Well, many people do feel that an immigration delay is in our favor. But I have not found that that's necessarily true when you're dealing with the issue of political asylum. Conditions change quite rapidly. And at the time of our hearing, it was presented that America was in control and that the Northern Alliance was in control. And these conditions have changed quite readily in that time. And that was what we attempted to show. All right. Thank you, Mr. Hickson. Counsel, the matter just argued will be submitted.
judges: Rymer, W.fletcher, Clifton